IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

**UNITED STATES AVIATION UNDERWRITERS INC.;**
and **HAULERS INSURANCE CO., INC.,**

    Plaintiffs,

v.

**UNITED STATES OF AMERICA,**

    Defendant.

7:05-cv-119 (HL)

# ORDER

**I. BACKGROUND**

On March 27, 2003, shortly after midnight, a small, twin-engine airplane crashed in South Georgia. Both the pilot and co-pilot were killed. Plaintiffs United States Aviation Underwriters, Inc. ("USAU") and Haulers Insurance Company, Inc. ("Haulers") have brought the present lawsuit, pursuant to the Federal Tort Claims Act ("FTCA") to recover the damages, losses, and expenses they incurred as a result of the crash.[1] Specifically, USAU and Haulers contend that sudden clear air turbulence ("CAT") caused the accident. Their pleadings and arguments suggest that they allege negligence by the

---

[1] Haulers, the owner of the aircraft involved in the crash, is the real party in interest but has assigned its rights and causes of action to USAU.

1

United States under two alternative theories: the Government either failed to exercise reasonable care in forecasting the CAT or it knowingly failed to warn the crew of the CAT that it knew was occurring or was going to occur.[2]

The National Weather Service Instruction Manual addresses the procedures for developing Area Forecasts ("FAs") and Significant Meteorological Information ("SIGMET"), and Airman's Meteorological Information ("AIRMET"). Def.'s Mot. Dismiss Ex. ("Def.'s Ex.") 2 at 3. SIGMETs and AIRMETs provide warnings of various dangerous conditions for aircraft, including CAT. The NWS has four meteorological watch offices: The Aviation Weather Center (AWC) is one of those offices and has responsibility for issuing the area forecasts for the forty-eight coterminous states. Id. Area forecasts "describe in abbreviated language specified en-route weather phenomena" and include references to any valid SIGMETs or AIRMETs. Id. at 4-5. The NWS's weather services provide complete coverage to aviation customers in United States-controlled airspace. Id. at 3.

---

[2]Plaintiffs state that:
> [t]he conduct at issue in this case can be summarized as follows: (1) moderate to severe CAT was actually occurring over an area of at least 3,000 square miles at the time of the crash; (2) the FAA and the NWS negligently failed to issue an AIRMET or SIGMET (warning) for that CAT; (3) the crash was caused by an encounter with severe unforecasted CAT; and (4) if an AIRMET or SIGMET had been issued, the crash would not have occurred.

Pls.'s Resp. at 16. The second and third points simply allege causation, not negligent conduct.

## II. ANALYSIS

### A. Structure of the FTCA

The FTCA provides that the United States may be held liable for the negligent conduct of its employees "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C.A. § 2674 (West 2006). Congress did not intend to create new causes of action when it implemented the FTCA, but only to "provide redress for ordinary torts recognized by state law." Howell v. United States, 932 F.2d 915, 917 (11th Cir. 1991). If a private party in a comparable position would not be held liable under the applicable state law, then the federal government would not be liable under the FTCA. Pate v. Oakwood Mobile Homes, Inc., 374 F.3d 1081, 1084 (11th Cir. 2004). This requirement of a state law analogue is a jurisdictional prerequisite; if there is no state law under which a private person would be liable, then federal courts do not have subject matter jurisdiction to entertain the suit against the Government.

Despite the consent to suit embodied in the FTCA, Congress retained the principle of sovereign immunity in certain situations, incorporating numerous exceptions into the Act. See 28 U.S.C.A. § 2680(a)-(n). If either the state analogue is missing or one of the exceptions applies, dismissal is appropriate. Monzon v. United States, 253 F.3d 567, 570 n.2 (11th Cir. 2001) (affirming dismissal of FTCA claim based on application of the discretionary function exception without addressing question of liability under state law).

### B. Facial Attack: State Law Analogue

#### 1. Standard in a Facial Challenge under Rule 12(b)(1)

The Government has made both factual and facial challenges to this Court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). In a facial attack, the movant alleges a lack of subject matter jurisdiction based on the face of the pleadings. The assertions in the complaint are therefore taken as true, and the court does not consider evidence outside of the pleadings. McMaster v. United States, 177 F.3d 936, 940 (11th Cir. 1999). The plaintiff carries the burden of alleging facts sufficient to demonstrate subject matter jurisdiction. In its facial challenge, the Government argues that there is no state law under which Plaintiff could recover in an analogous suit against a private individual. As noted above, without a state law analogue this Court has no jurisdiction to entertain the suit against the United States. The use of a Motion to Dismiss to address this issue is therefore appropriate.

#### 2. Choice of Law

In claims involving the FTCA, federal courts must apply the conflict-of-laws rules of the state where the negligent act or omission occurred. Richards v. United States, 369 U.S. 1, 11 (1962). Plaintiffs' Complaint states that the "act or omissions giving rise to the claim occurred [in the Middle District of Georgia] near Homerville, Georgia." Compl. ¶ 2.0. Georgia courts use the rule of *lex loci delicti*, which provides that the substantive law of the state where the tort was committed governs. Dowis v. Mud Slingers, Inc., 621

S.E.2d 413, 419 (Ga. 2005). According to the pleadings, the act or omission occurred in Georgia, so Georgia substantive law would govern.³

### 3. Liability of a Private Person In "Like Circumstances" Under Georgia Law

The FTCA makes the United States liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C.A. § 2674. It is not necessary that the state's law support an action against a private individual in the *exact* circumstances as the federal government; if a private party in an analogous situation would owe a duty to the defendant then the FTCA's "like circumstances" requirement is met. See Indian Towing Co. v. United States, 350 U.S. 61, 64-65 (finding that good Samaritan principle provides a basis for liability for negligent lighthouse operation); United States v. Olson, 546 U.S. 43, 47 (2005) (holding that federal mine inspectors are liable to the same extent as private safety inspectors).

In Indian Towing Co. v. United States, the United States Supreme Court held that the federal government was liable under the FTCA for negligently operating a lighthouse. Indian Towing, 350 U.S. at 64-65. It recognized that the operation of a lighthouse was a uniquely government function that a private individual would not perform. Id. at 64.

---

³Both Parties argue in their briefs that Florida or Tennessee law governs. The Complaint, however, provides no indication of what acts or omissions may have occurred in either of these states. The only reference in the Complaint to either Florida or Tennessee alleges that "the Airplane was flying from Tennessee en route to Florida via Georgia, and in contact with (and being monitored by) the defendant USA's Air Traffic Controllers and/or radar control specialists." Compl. ¶ 7.0. The Court assumes, as it must, that the allegations in the Complaint are true and that the tortious act or omission occurred in Georgia.

5

Nonetheless, the Court seized upon the FTCA's language of "like circumstances," emphasizing that the statute did not require that a private person would be liable under the same circumstances. Id. Instead of asking whether private operators of lighthouses would be liable to seamen, the Court made a much more generalized inquiry. It found that the good Samaritan principle provided the necessary basis for liability under state law: "it is hornbook tort law that one who undertakes to warn the public of danger and thereby induces reliance must perform his 'good Samaritan' task in a careful manner." Id. at 64-65.

In the present case, Haulers, as the owner of the aircraft, argues that the Government had a duty to the airplane's crew to exercise reasonable care in forecasting turbulence and providing warnings of forecasted turbulence. The duty to the crew then creates liability to the third-party owner of the airplane. Georgia has adopted a version of the good Samaritan doctrine as articulated in the Restatement of Torts. Huggins v. Aetna Cas. & Sur. Co., 264 S.E.2d 191, 192 (Ga. 1980) (adopting Restatement of Torts (Second) § 324A). Under the Restatement,

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or

> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement of Torts (Second) § 324A. Unlike the basic principle the Supreme Court recited in Indian Towing, under Georgia law a voluntary undertaking only creates liability when one of the three additional requirements is present. See Restatement of Torts (Second) § 324A(a)-(b); Boyce v. Gregory Poole Equip. Co., 605 S.E.2d 384 (Ga. App. 2004) (finding that seller of forklift undertook safety investigation and discussed safety options with buyer, which could create a duty of reasonable care if there was detrimental reliance); Adler's Package Shop, Inc. v. Parker, 378 S.E.2d 323 (Ga. App. 1989) (refusing to find store liable when it undertook to provide security but injured patron did not rely on the store to do so).

There is no allegation that the United States was performing a duty owed to the pilot by some third party. Similarly, Plaintiffs do not argue that United States increased the risk of the weather conditions when it chose to attempt to provide forecasts. See Dale v. Keith Built Homes, Inc., 620 S.E.2d 455 (Ga. App. 2005) (defendant's negligent act must have made the condition worse than it would have been had he not acted at all). Consequently, subsections (a) and (b) do not apply in this case. Instead, Plaintiffs allege that the pilot detrimentally relied on the United States' voluntary undertaking of forecasting turbulence and communicating warnings to pilots. See Restatement (Second) of Torts § 324A(c).

Defendant makes three responses to Plaintiffs' claim that the good Samaritan

doctrine provides a basis for liability of a private person in like circumstances under state law. First, there is no need to look "further afield" to the good Samaritan doctrine for an analogue to Government forecasters because private forecasters exist and have not been found liable under state law. Georgia courts have not ruled one way or another, however, on the issue of forecaster's liability under Georgia law, so there is indeed a need to look for a broader analogy. Second, they argue that the good Samaritan doctrine "requires the voluntary assumption of a duty to a specific individual or group of individuals, not to the public at large." Def.'s Reply at 4. Regardless of whether this is true, the duty in this case would be to the pilots and passengers, not to the public at large. This is a group of individuals is just as discrete as the group of individuals that were owed a duty in <u>Indian Towing</u>, i.e., ship captains and passengers.

Finally, Defendant responds that imposing liability on the United States or any private forecaster for negligent forecasting of turbulence would create disastrous results and wide ranging, uncontrollable liability. In making this argument, however, the Government ignores the significant limitations that Georgia's good Samaritan doctrine places on the creation of liability. First, it only applies if the one who undertakes renders services that he should recognize as necessary for the protection of the individual or his things. Although predicting and recognizing turbulence is clearly necessary for the protection of individuals, predicting many other kinds of weather phenomena is not. Second, he is only liable for physical harm, not economic, emotional, or other kinds of

8

harm.  Third, he is liable only for negligent performance of services.  This is an especially important point considering the government's argument that recognizing a duty would result in liability for any failure to accurately predict the weather; on the contrary, the Government would only be responsible for a turbulence forecast that was negligent, not simply inaccurate.  Finally, as noted above, one of the three additional factors must apply.

As the Government undertook to operate a lighthouse in <u>Indian Towing</u>, the Government in this case undertook to forecast CAT and to provide pilots with warnings it had issued.  It likewise should have realized that both accurately predicting CAT and providing warnings of predicted CAT to pilots was necessary for the protection of the crew and Haulers' aircraft.  Plaintiffs have also pled facts that indicate the deceased may have relied on the Government's provision of services and warnings.  <u>See</u> Restatement of Torts (Second) § 324A(c).   In these circumstances, the United States would have a duty to exercise reasonable care in performing weather forecasting services and providing warnings to pilots under Georgia law.

**C. Factual Attack:  Discretionary Function**

<u>1. Standard in a Factual Challenge Under Rule 12(b)(1)</u>

"Factual attacks challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered."  <u>McMaster v. United States</u>, 177 F.3d 936, 940 (11th Cir. 1999) (citation and quotations omitted).  When evaluating a factual attack, a court is not

9

bound to accept plaintiff's allegations as truthful, "and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id. (citation and quotations omitted). Defendant attacks this Court's subject matter jurisdiction based on the discretionary exception function to the FTCA. This is a factual attack on jurisdiction because the application of the discretionary function exception depends on the facts of the case and cannot be resolved by looking to the pleadings alone.

### 2. Standard for Discretionary Functions

The Government's waiver of liability under the FTCA does not apply to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C.A. § 2680 (a) (West 2006). The Supreme Court of the United States has recognized that a precise definition of "discretionary" does not exist. United States v. S.A. Empresa de Viacao Aerea Rio Grandense, 467 U.S. 797, 813 (1984) (Varig Airlines). The Court, however, characterized the ultimate question as whether the "challenged acts . . . are of the nature and quality that Congress intended to shield from tort liability." Id. at 813. By including the discretionary function exception, Congress aimed to prevent courts from "second-guessing" decisions that are grounded in social, economic, or political policy. Id. at 814.

The discretionary function analysis is two-fold. Under the first prong of the

analysis, the court determines whether the conduct at issue involves "an element of 'judgment or choice.' " Monzon, 253 F.3d at 570 (quoting Berkovitz et al. v. United States, 486 U.S. 531, 536 (1988)). When a statute, regulation, or other policy specifically directs an employee to take a certain action, the discretionary function exception does not apply "because under those circumstances, 'the employee has no rightful option but to adhere to the directive.' " Id. (quoting Berkovitz, 486 U.S. at 536). Under the second prong, even if the conduct involves an element of judgment, the discretionary function exception will only apply if "that judgment is of the kind that the discretionary function exception was designed to shield"–in other words, decisions that are based on considerations of social, economic, and political policy. Berkovitz, 486 U.S. at 536-37.

        3. Application

Defendant concedes that once NWS forecasts moderate to severe turbulence, there is no discretion to decline to provide that information to the pilot. Both parties therefore agree that the discretionary function exception does not apply to one of Plaintiffs' two alternative theories of the case, i.e., that the Government had issued an AIRMET or SIGMET but failed to provide that information to the flight crew. The Government does contend, however, that forecasting CAT is discretionary conduct that the exception shields from liability. The Government therefore argues that even if the NWS was negligent in failing to forecast CAT, that omission is not actionable under the FTCA.

Plaintiffs point to two policy directives that govern the conduct of employees and

11

prevent the exercise of discretion: NWS Instruction 10-810 and 10-811. Specifically, NWS Instruction 10-810 states, in part, that "[w]hen weather conditions meeting or exceeding criteria for SIGMET issuance occur or are expected to occur within two (2) hours, a SIGMET will be issued." Pls.'s Response Def.'s Mot. Dismiss Ex. ("Pls.'s Ex.") 1 at 3. In addition, under the heading "SIGMET Criteria" NWS Instruction 10-811 states that "SIGMETs will be issued when [severe turbulence] is occurring, or expected to occur, affecting an area approximately one (1) latitude degree squared, (about 3000 square miles), or an area deemed to have a significant effect on the safety of aircraft operations." Pls.'s Ex. 2 at 9. The Instruction requires that "[a]n AIRMET will be issued when [moderate turbulence] occur[s] and affect[s] an area of at least 3,000 square miles. Pls.'s Ex. 2 at 13.

As the Government has conceded, these regulations leave no room for discretion once it is clear that a SIGMET or AIRMET has been or is expected to occur; the AWS is required to issue the warning under the clear language of the NWS Instruction Manual. Plaintiffs do not, however, isolate any rule or regulation that governs the development of weather forecasts or the determination of whether a meteorological event is taking place at any given moment. In fact, one witness testified that making a weather forecast entails collecting information from a variety of sources and incorporating all the information "into a decision-making process where our forecaster uses discretion to make a judgment as to the quality of the information . . . a subjective, discretionary decision after they go

through the entire process, from looking at the raw information, displaying that information, getting a large-scale picture, and then trying to tailor it down to a smaller scale event." Def.'s Ex. 6 at 3. In addition, SIGMETs include severe turbulence, while moderate turbulence is characterized as an AIRMET. Compare Pls.'s Ex. 1 at 2 with Pls.'s Ex. 2 at 9. Distinguishing between the moderate and severe air turbulence is "a subjective evaluation of the meteorologist" based on a number of factors and available data. Defs.'s Ex. 5. A forecaster must therefore exercise his or her judgment when identifying the weather pattern.

Under the second prong of the analysis the action is only protected, however, if the decision was grounded in social, economic, or political policy. Courts have overwhelmingly held that weather forecasts are the kinds of decisions that the discretionary function was meant to protect from liability under the FTCA. As the Eleventh Circuit Court of Appeals has recognized, issuing weather warnings implicate policy concerns, including the dangers of "over warning," the economic impact of "oversized" forecasts, and the staffing limitations upon the NWS in light of the demands for forecasting. Monzon, 253 F.3d at 572 (noting cost concerns in making forecasts and issuing warnings); see also Spencer v. New Orleans Levee Bd., 737 F.2d 435, 437 (5th Cir. 1984); Berqguist v. Nat'l Weather Svc., 849 F. Supp. 1221, 1233 (N.D. Ill. 1994) (recognizing three policy factors implicated in forecasting as cost, dangers of over warning, and desirability of vesting discretion in forecasters).

13

Making the weather forecast and determining whether a SIGMET or AIRMET was happening or was going to happen is therefore conduct that the discretionary exception function protects and as such these actions are not subject to liability under the FTCA. If meteorologist determined that a SIGMET or AIRMET warning was warranted, however, there was no discretion to decline to issue that warning under NWS policy.

## III. CONCLUSION

The Court grants Defendant's Motion to Dismiss with regard to claims for negligent forecasting. See Compl. ¶ 16.2-16.3  It denies the Motion, however, with regard to any claims Plaintiffs have against the Government for failure to warn the flight crew of turbulence advisories that meteorologists had issued. See Compl. ¶ 16.1,16.4-16.5.  Defendant has attacked the merits of this remaining claim, see Def.'s Reply at 6, but such at attack is appropriately addressed at the summary judgment stage, not on a Motion to Dismiss.  The Court recognizes that the time for filing of dispositive motions has expired.  See March 27, 2006 Order (Doc. 11).  The Court therefore grants the parties leave to file dispositive motions on or before January 17, 2008.

SO ORDERED, this the 17th day of December, 2007.

　　　　　　　　　　　　　　　　　　　　　　　/s/_____
　　　　　　　　　　　　　　　　　　　　　　　HUGH LAWSON, Judge

tch